J-S04001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: Y.H., MOTHER | : | |
| | : | |
| | : | No. 2745 EDA 2022 |

Appeal from the Order Entered September 30, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-DP-0001079-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: S.M.T.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: Y.H., MOTHER | : | |
| | : | |
| | : | No. 2746 EDA 2022 |

Appeal from the Decree Entered September 30, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-AP-0000423-2022

BEFORE: MURRAY, J., KING, J., and PELLEGRINI, J.*

MEMORANDUM BY MURRAY, J.:                    **FILED MARCH 20, 2023**

Y.H. (Mother) appeals from the decree involuntarily terminating her parental rights to S.M.T.W. (Child), and the order changing Child's permanency goal to adoption. We affirm.

---

* Retired Senior Judge assigned to the Superior Court.

Mother accurately summarized the history of this case as follows:

Child was born [in June 2019] to minor Mother [], who was herself a [17 year old] dependent child in placement with [the Department of Human Services (DHS)]. The Child was placed with Mother in a mother/baby placement. Mother was not compliant with her own placement and then left the mother/baby placement with the Child. On 6/26/19, an [order for protective custody (OPC)] was obtained for Child and she was placed into a foster home. When drug tested[,] Mother was testing positive for marijuana. On 8/16/19, a Single Case Plan was created requiring Mother to avail herself to [the Community Umbrella Agency (CUA)], to participate in AIC[1], to visit with Child twice weekly, to call and confirm visits with 24 hour notice, to participate in grief counseling, to complete a [Clinical Evaluation Unit (CEU)] assessment and to complete three random drug screens. Child was adjudicated dependent on 8/28/19. Several revisions of the Single Case Plan were created but the objectives for Mother remained essentially the same. Throughout the life of the case and the several hearings, Mother's compliance was rated as minimal. On 7/13/22, a petition to terminate Mother's parental rights and to change the goal to adoption was filed. The matter came before the [c]ourt for trial on 9/30/22. …

Mother's Brief at 8 (footnote added).

On September 30, 2022, the trial court entered the decree terminating Mother's parental rights, and the order changing Child's permanency goal to adoption.[2] Mother timely filed notices of appeal and concise statements of errors at both dockets. Thereafter, the trial court advised it had "stated on the record the reasons for … terminating parental rights and changing the

---

[1] AIC is not defined in the record. However, the CUA case manager, Brenda Smith, testified that Mother's case plan objectives included substance abuse and mental health treatment, parenting classes, appropriate housing, and proof of income. N.T., 9/30/22, at 12.

[2] The trial court also terminated the parental rights of J.W. (Father) and all unknown putative fathers on September 30, 2022. No fathers have appealed.

Child's permanency goal to adoption[.]" Notice of Compliance with Rule of Appellate Procedure 1925(a), 11/23/22, at 1-2. This Court consolidated the appeals on December 20, 2022.

Mother presents a single issue for review:

Whether the trial court committed reversible error when it terminated Mother's parental rights and changed the goal to adoption on less than clear and convincing evidence?

Mother's Brief at 7.

Mother concedes that DHS proved grounds for termination under Section 2511(a). She states:

Mother cannot challenge the determination that DHS presented clear and convincing evidence pursuant to 23 PA.C.S. [§] 2511(a)(1), (2), (5) and (8). Mother did not successfully complete what were arguably reasonable objectives designed to reunite her with the Child, although she did make some efforts having completed parenting and housing classes and attending a significant number of visits with the Child. **The dispute in this case is whether there was clear and convincing evidence that there was no bond between the Mother and the Child and that it was in the Child's best interests to change the goal to adoption**.

*Id.* at 17-18 (emphasis added).

Mother asserts the trial court abused its discretion because the evidence "clearly and convincingly established that there was a significant bond" between Mother and Child. *Id.* at 19. Mother claims the trial court "disregarded compelling evidence from the CUA worker and Mother," and its "judgment of no harm to the Child was speculative at best." *Id.* Mother states, "For instance, the evidence was clear and convincing that there is a

- 3 -

physical component to the bond: the Child hugs and kisses the Mother.  They hold hands." *Id.* at 17.  Mother further states:

> They play together.  Additionally, there was evidence that there was a significant bond in other ways, for instance the FaceTime moments with Mother's family.  The CUA worker specifically testified that Mother acted appropriately during the visits, that she had never attended a visit while intoxicated and that, most importantly, the Child enjoyed the visits with her Mother.  Had Mother ever been given a chance to interact with her Child in more natural surroundings than an office, the bond would have been strengthened.

*Id.* at 19.

Conversely, DHS asserts "the record contains ample, clear and convincing evidence that Child and Mother did not share a parent-child bond; that Child would not suffer irreparable harm from the termination of Mother's parental rights; and that termination best suited her needs and welfare."  DHS Brief at 14.  Child's counsel, noting that "subsection 2511(b) requires consideration of the development and emotional needs of the child," asserts the evidence "was clear that a bond did not exist between Mother and [C]hild."  Child Advocate Brief at 17.  Child's counsel states:

> [C]hild looks to her foster parents to meet her daily needs. [] Mother did not attend over half of her supervised visits during the time that the case has been open.  Mother does not have a bond with [C]hild.  [C]hild will not suffer irreparable harm if her biological Mother's rights are terminated.  []Child looks to her foster parents for love and affection.

*Id.* at 17-18.

We review Mother's arguments mindful that

appellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

*In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012) (citations omitted).

The burden is on the petitioner "to prove by clear and convincing evidence that [the] asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Pertinently, Section 2511(b) provides:

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

When considering Section 2511(b), "the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re L.W.*,

- 5 -

267 A.3d 517, 523 (Pa. Super. 2021) (citation omitted). "[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id.* (citations omitted). "[A] parent's basic constitutional right to the custody and rearing of ... her child is converted, upon the failure to fulfill ... her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.*

The record does not support Mother's argument. The CUA case manager, Ms. Smith, testified that Child continues to reside in the same foster, pre-adoptive home where Child was placed in 2019, when she was three weeks old. N.T., 9/30/22, at 33. The foster family consists of a mother, father, one biological child and two foster children with whom Child has bonded. *Id.* at 34, 40. Ms. Smith opined that Child's foster family provides Child with love, safety, stability, and support; she also testified that the foster family meets Child's emotional, medical, developmental, and daily needs. *Id.* Ms. Smith testified that Child's "primary parent-child bond" is with her foster mother. *Id.* Critically, when asked whether she believed there was "any parent-child bond between" Mother and Child, Ms. Smith stated: "No, I do not." *Id.* Ms. Smith described Child's visits with Mother "as more of a play date." *Id.* at 35. Ms. Smith stated that after Child's visits with Mother, Child "just expresses that she's ready to go home to [foster] mommy." *Id.* at 52.

Ms. Smith further concluded that termination was in Child's best interest. *Id.* at 39. She explained:

> [The foster home] is where [Child has] been since she was three weeks [old,] she's currently three years, three months [old]. [The pre-adoptive foster parents] are who she looks at for comfort, love, as well as support. She identifies [foster mother] as the mom, and the foster father as Darrell.
>
> Anytime she sees me, all she wants is, "Darrell, Darrell," and she's asking me for "Mom, mom." So this is all she knows. The [pre-adoptive foster parents] provide everything for her.

N.T., 9/30/22, at 39. Ms. Smith opined that termination would not cause Child irreparable harm. *Id.* To the contrary, Ms. Smith believed Child would suffer irreparable harm if she were removed from her foster family. *Id.*

Mother testified that she and Child interact as "daughter and mommy[.]" *Id.* at 66. She described her visits with Child as "calm" and affectionate. *Id.* at 65. Mother relayed that she tells Child, "people are watching over" Child because Mother is "trying to get [herself] together." *Id.* Mother admitted she last cared for Child in 2019, when Child was three weeks old. *Id.* at 74.

In addition, Child's attorney, Lisa Visco, advised:

> I am in agreement with the termination, Your Honor. This child has been at [her foster] home for three years. She's bonded with the family there, and it's in her best interest to be adopted.

N.T., 9/30/22, at 86.

On this record, the trial court concluded "there was no evidence [that] a parent-child bond existed between Mother and Child." Notice of Compliance

with Rule of Appellate Procedure 1925(a), 11/23/22, at 2. The trial court

explained:

> [T]he fact that [C]hild knows who [Mother] is and interacts with her, does not establish a parent-child bond ...
>
> There's simply no evidence of the parent-child bond with [Mother] and this child. [Mother] has not acted in a maternal way towards this child throughout the life of this case. Having limited visits is not sufficient to establish that type of bond ....

N.T., 9/30/22, at 96-97.

> The court continued:
>
> [C]hild has been in the same home for virtually all of her life. She came into care at three weeks old, and she is now three. It is in [C]hild's best interest to be freed for adoption and to terminate [Mother's] parental rights in this case.
>
> I do not find that [C]hild would suffer any irreparable harm. [Child] knows who [Mother is], but she does not look to [Mother] as [a] parent …
>
> Again, under 2511(b), there is no evidence that there is a parental bond, despite counsel's argument to the contrary. … There's no indication that [C]hild looks to [Mother] as a mom. The fact that [Child] knows [Mother] and may enjoy spending time with her does not establish there is a parent-child bond, which is necessary under 2511(b).

N.T., 9/30/22, at 98-100.

The trial court's reasoning is consistent with both the record and

applicable law. Accordingly, the trial court did not err or abuse its discretion

in terminating Mother's parental rights pursuant to Section 2511(b).

Decree and Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/2023